**FARMERS UNION CENTRAL EXCHANGE, INC.**
Plaintiff-Appellee,

v.

Lee THOMAS, Administrator, Environmental Protection Agency,
Defendant-Appellant.

No. 88-3609.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 1989.

Decided Aug. 4, 1989.

Michael P. Healy, Attorney, Dept. of Justice, Washington, D.C., for defendant-appellant.

Pamela J. White and Sherwood B. Smith, Jr., Ober, Kaler, Grimes & Shriver, Washington, D.C., for plaintiff-appellee.

Before GOODWIN, Chief Judge, WRIGHT and NORRIS, Circuit Judges.

GOODWIN, Chief Judge:

This case arises out of the Environmental Protection Agency's regulatory control over the lead content of gasoline. EPA appeals a memorandum opinion and order in which the district court exercised jurisdiction under the citizen suit provision of the Clean Air Act, 42 U.S.C. § 7604 (1982), and granted a permanent injunction by summary judgment in favor of Farmers Union Central Exchange ("CENEX"). We vacate the injunction because we find the district court lacked jurisdiction over this matter.

## I. FACTS AND PROCEEDINGS BELOW

The Clean Air Act, 42 U.S.C. §§ 7401–7642 (1982 & Supp. IV 1986), authorizes EPA to regulate fuels or fuel additives that contribute to air pollution. *Id.* § 7545(c). Pursuant to this statutory authority, EPA promulgated regulations in 1985 reducing the allowable lead content of gasoline. Regulation of Fuel and Fuel Additives; Banking of Lead Rights, 50 Fed.Reg. 13,-116 (1985) [hereinafter Fuel Regulations] (codified at 40 C.F.R. § 80.20 (1988)). These regulations require refiners to reduce the lead content of gasoline according to an increasingly stringent standard. *See* 40 C.F.R. § 80.20(a). To assist compliance, EPA instituted a lead credit banking program. Fuel Regulations, *supra*, at 13,116 (codified at 40 C.F.R. § 80.20(e)). Producers who voluntarily used less lead per gallon than that allowed under the regulations could reserve their lead usage rights for use at any time through the end of 1987, the expiration of the program. In addition, producers were free to transfer banked lead credits to other producers on a quarterly basis through 1987. *See* 40 C.F.R. § 80.20(e).

CENEX refines and imports leaded gasoline. This action arises from an intended exchange of lead credits between CENEX and Associated Fuel Distributors, Inc. ("AFD"), another refiner, in which CENEX would sell AFD lead credits in the third quarter of 1986 and buy them back in the fourth quarter. Thus on September 16, 1986, CENEX agreed to sell AFD 25 million grams of lead credits at 5 cents per gram, effective the same day. Pursuant to EPA regulations, this transaction was reported in the third-quarter reports of both CENEX and AFD. The September agreement further provided that AFD would sell 25 million grams of lead credits to CENEX at 4.9 cents per gram, effective October 1, 1989. The fourth-quarter report of CENEX listed this transaction. However, AFD filed no fourth-quarter report. Moreover, according to its report for the third quarter, AFD sold a total of 25 million grams of lead credits to three other refiners in the third quarter. The reports of the three refiners confirmed this sale. This sale left AFD with a lead credit balance at the start of the fourth quarter insufficient to transfer 25 million grams of lead credits to CENEX as previously agreed.

In February, 1987, EPA informed CENEX that its reported fourth-quarter pur-

chase from AFD had not been confirmed by AFD, and EPA therefore questioned the validity of the reported transfer. In March, CENEX supplied EPA with copies of telex invoices confirming the September agreement with AFD. On April 3, EPA issued a letter notifying CENEX that it would not recognize the disputed purchase from AFD. It informed CENEX that EPA did not recognize reported sales or purchases of lead credits without confirming reports from both parties to the transaction. Despite CENEX's request that EPA suspend the credits reportedly purchased from AFD by the three other refiners, and initiate an enforcement proceeding against AFD for failing to file its fourth-quarter report, EPA confirmed its determination of April 3 in June. A letter followed on July 20 from the Assistant Administrator for Air and Radiation, informing CENEX that EPA would not recognize the lead credits it had reported as purchased in the fourth quarter and stated that the decision constituted final agency action, appealable only in the appropriate United States Court of Appeals. EPA has pursued no action against AFD.

CENEX responded by filing a complaint in district court. Basing jurisdiction on Section 304(a) of the Clean Air Act, 42 U.S.C. § 7604(a), the citizen suit provision, CENEX alleged that EPA had failed to perform a nondiscretionary duty under the Clean Air Act and its regulations. It also alleged that EPA's action was arbitrary and capricious, and constituted an uncompensated taking. CENEX requested preliminary injunctive relief which would require EPA to recognize the fourth-quarter purchase. EPA moved for dismissal.

A magistrate denied EPA's motion to dismiss and ordered EPA to accept and recognize the banked lead credits listed on CENEX's fourth-quarter report from 1986 and to allow CENEX to use and sell those credits in accordance with EPA regulations. Following notice from EPA that it would seek review in the district court, CENEX moved for summary judgment and permanent injunctive relief in the district court. Thereafter, EPA filed its own motion for summary judgment.

On December 14, 1987, the district court denied EPA's appeal. The court rejected EPA's claim that the district court lacked jurisdiction, holding that "EPA has failed to follow its own adopted regulations by refusing to accept [CENEX's] lead credit banking compliance reports." The court granted summary judgment in favor of CENEX in the form of a permanent injunction. It ordered EPA to accept and recognize the banked lead credits listed on CENEX's fourth-quarter report for 1986 and to allow CENEX to use and sell those credits in accordance with regulations. Pursuant to Fed.R.Civ.P. 41(a)(2), the court dismissed those claims raised by CENEX that had not been addressed by the magistrate. CENEX did not appeal the dismissal of those claims.

With only two weeks remaining before the expiration of the lead credit banking program, CENEX sold the balance of its lead credits.

## II. DISCUSSION

### A. Mootness

■ Because the lead credit banking program expired at the end of 1987, CENEX asks us to consider whether this appeal is now moot. EPA argues that the appeal is not moot because a reversal of the judgment will enable it to initiate enforcement proceedings against CENEX, presumably for CENEX's sale of the disputed lead credits in December of 1987. CENEX argues it reasonably relied on the district court judgment and the failure of EPA to seek a stay of that judgment, or even indicate its intent to appeal before the end of 1987, and thus EPA cannot equitably pursue an enforcement action.

The present case is analogous to *Edgar v. MITE Corp.*, 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982), in which the Supreme Court found an appeal had not become moot. In that case, a district court had issued an injunction against the Illinois Secretary of State, prohibiting him, on preemption grounds, from enforcing an Illinois statute regulating tender offers. *MITE* proceeded with the offer and, relying on

the injunction, ignored the requirements of the Illinois statute. Prior to appellate review of the injunction, however, *MITE* withdrew its tender offer, thereby raising the question whether the appeal had become moot. The Supreme Court found it had not. Though *MITE* had withdrawn its tender offer, it continued to need the injunction to prevent the Illinois Secretary of State from taking enforcement action against it for its earlier actions. *Id.* at 626–30, 102 S.Ct. at 2632–34. The Court noted that although *MITE*'s reliance on the injunction might serve as a defense to a state enforcement proceeding, this was an issue to be addressed when and if the Secretary of State initiated an enforcement action. *Id.* at 630, 102 S.Ct. at 2634.

Similarly, we leave to a future enforcement action, if any, the issue whether CENEX is insulated from civil and criminal liability because of its reliance on the district court judgment. For now, the potential for an enforcement action qualifies this dispute as a case or controversy.

Further, we do not think that *MITE* is inapposite merely because CENEX, the party that arguably continues to need the injunction to protect it from an EPA enforcement action, argues the case is moot. CENEX argues that this appeal is moot because EPA is estopped from pursuing enforcement action. As discussed, we do not need to address CENEX's estoppel argument, but we do not understand CENEX to abandon its stake in this appeal merely because it makes this argument. Moreover, just as CENEX has an interest in preserving the injunction because it effectively shields CENEX from any enforcement action by EPA, EPA has a stake—albeit a mirror-image one—in vacating the injunction because the injunction effectively prevents EPA from commencing an enforcement action. The possibility that we might affirm the district court's order keeps EPA's interest alive. *See Williams v. INS,* 795 F.2d 738, 741–42 (9th Cir.1986).

*B. Nondiscretionary Duty*

■ The Clean Air Act establishes a bifurcated system for judicial review of agency action. Under the "citizen suits" provision, any person may commence an action in the district court against the Administrator for failing to perform a nondiscretionary act or duty. 42 U.S.C. § 7604(a). On the other hand, the courts of appeals have original jurisdiction to review challenges to final agency actions. 42 U.S.C. § 7607.

CENEX maintains that jurisdiction was proper in the district court because EPA failed to perform a nondiscretionary duty by failing to recognize the lead credit purchase CENEX reported in its 1986 report for the fourth quarter. CENEX claims that it fully complied with all relevant regulations, and thus EPA was required to recognize the transfer as reported by CENEX.

■ Whether a complaint alleges the failure of the Administrator to perform a nondiscretionary duty sufficient to give rise to citizen suit jurisdiction is a legal determination reviewable *de novo. See Kennecott Copper Corp. v. Costle,* 572 F.2d 1349, 1353–56 (9th Cir.1978).

We note that some courts have stated that only a "clear-cut" nondiscretionary duty gives rise to section 304 jurisdiction. *See Sierra Club v. Thomas,* 828 F.2d 783, 791 (D.C.Cir.1987) (section 304 permits "citizen enforcement of clear-cut violations by polluters or defaults by the Administrator") (quotations omitted); *Mountain States Legal Found. v. Costle,* 630 F.2d 754, 766 (10th Cir.1980) (citizen suit jurisdiction proper only in action to enforce "specific nondiscretionary clear-cut requirements of the Clean Air Act"), *cert. denied,* 450 U.S. 1050, 101 S.Ct. 1770, 68 L.Ed.2d 246 (1981).

CENEX, however, can point to nothing in either the statute or the regulations requiring EPA to recognize all lead credit transfers if duly reported. *See Council of Commuter Orgs. v. Metropolitan Transp. Auth.,* 683 F.2d 663, 670 (2d Cir.1982) ("[w]e have scrutinized plaintiff's rather abstruse amended complaint and its appendix in a generally unrewarding search for the precise provisions of the 1980 plan alleged to have been violated"). Instead, CENEX claims that EPA's failure to ad-

here to its own regulations constituted a violation of a nondiscretionary duty.

We fail to see in what way EPA ignored its own regulations. On discovering the unconfirmed purchase reported by CE-NEX, EPA had two options, both of which would have served its stated goal of maintaining the appropriate level of lead in leaded gasoline. *See* Fuel Regulations, *supra,* at 13,116. It could have demanded a fourth-quarter report from AFD. AFD presumably would have reported a negative balance, and based on this report, EPA could have assessed penalties and perhaps required AFD to buy lead credits from some other source in order to correct the deficiency. *See* Fuel Regulations, *supra,* at 13,118 (the lead credit regulations "would not permit 'borrowing' of lead to be paid back in future quarters"). Instead, EPA chose a second option: it refused to recognize CENEX's reported purchase, and thereby left any dispute between CENEX and AFD to those parties.

Absent some provision requiring EPA to adopt one course of action over the other, we can only conclude that EPA's choice represented an exercise of discretion. This is not to say that this court would have made the same choice. Nor does it mean that CENEX could not make out a case that EPA abused its discretion. Because EPA is under no nondiscretionary duty not to abuse its discretion, *Sierra Club,* 828 F.2d at 792, however, such a case is not properly brought in the district court under section 304.

## C. Other Bases for Jurisdiction

CENEX claims that even if citizen suit jurisdiction was lacking in this case, alternative grounds for the district court's jurisdiction exist, namely 28 U.S.C. § 1331, because CENEX alleged a takings claim in its complaint, and 28 U.S.C. § 1361. We disagree.

■ CENEX's complaint contains no reference to 28 U.S.C. § 1361. In any case, that section fails to confer jurisdiction to compel agency action where review by other means is possible. *Telecommunications Research and Action v. FCC,* 750

F.2d 70, 77–78 (D.C.Cir.1984). Here review was possible under section 307 of the Clean Air Act, 42 U.S.C. § 7607, in the court of appeals.

■ Nor can the district court's jurisdiction rest on CENEX's takings claim. The district court expressly dismissed "those claims for relief sought by CENEX in its complaint that do not appear in or were not otherwise addressed" by the magistrate. CENEX's claim was not addressed by the magistrate, and CENEX did not appeal this portion of the district court's decision. Thus the district court clearly based its jurisdiction on the citizen suit provision alone.

Accordingly, the injunction is VACATED, and this action is REMANDED with instructions to dismiss the complaint.