**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WILDEARTH GUARDIANS, MIDWEST
ENVIRONMENTAL DEFENSE CENTER,
and SIERRA CLUB,
*Plaintiffs-Appellants*,

v.

GINA MCCARTHY, in her official
capacity as Administrator of the
Environmental Protection Agency,
*Defendant-Appellee.*

No. 12-16797

D.C. No.
4:11-cv-05651-
YGR

OPINION

Appeal from the United States District Court
for the Northern District of California
Yvonne Gonzalez Rogers, District Judge, Presiding

Argued and Submitted
October 10, 2014—San Francisco, California

Filed December 1, 2014

Before: William C. Canby, Jr., William A. Fletcher,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Watford

## SUMMARY[*]

### Environmental Law

The panel affirmed the district court's dismissal for lack of subject matter jurisdiction of plaintiff environmental groups' Clear Air Act citizen-suit action seeking to require the Environmental Protection Agency's Administrator to issue revised regulations governing ozone pollution.

The Clean Air Act's citizen-suit provision, 42 U.S.C. § 7604, authorizes suits against the EPA's Administrator only for actions where there is an alleged failure by the Administrator to perform an act or duty which is not discretionary with the Administrator. In 1977, Congress added a new program to the Clean Air Act, known as the Prevention of Significant Deterioration (PSD) program, to prevent air quality from significantly deteriorating in areas that already had relatively clean air. Section 166(a) of the Clean Air Act required the EPA to issue regulations implementing the PSD program, and plaintiffs alleged that the Administrator had a nondiscretionary duty to issue revised ozone regulations under § 166(a).

The panel held that given § 166(a)'s ambiguity, the existence of a nondiscretionary duty to promulgate revised PSD regulations for ozone was not clear cut or readily ascertainable from the statute. The panel concluded that this was enough to preclude plaintiffs' reliance on § 7604(a)(2) as the jurisdictional basis for their suit.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

David Bender (argued) and Christa Westerberg, McGillivray, Westerberg & Bender, Madison, Wisconsin; Robert Ukeiley, Berea, Kentucky; Kristin Henry, Sierra Club, San Francisco, California; James Jay Tutchton, WildEarth Guardians, Centennial, Colorado, for Plaintiffs-Appellants.

Robert Lundman (argued), Ignacia Moreno, Assistant Attorney General, Eileen McDonough, and David Gunter, United States Department of Justice, Environment & Natural Resources Division, Washington, D.C.; Brian Doster and Melina Williams, Office of General Counsel, Environmental Protection Agency, for Defendant-Appellee.

**OPINION**

WATFORD, Circuit Judge:

Plaintiffs WildEarth Guardians, Midwest Environmental Defense Center, and Sierra Club are organizations dedicated to environmental conservation. They believe the Environmental Protection Agency (EPA) has been derelict in its duty to protect the nation's air from ground-level ozone pollution. They sued the EPA's Administrator in federal district court, seeking an order that would force the Administrator to issue revised regulations governing ozone pollution.

Plaintiffs invoked the Clean Air Act's citizen-suit provision, 42 U.S.C. § 7604, as the sole basis for subject matter jurisdiction. That provision authorizes suits against the Administrator, but only for actions "where there is alleged

a failure of the Administrator to perform any act or duty under this chapter which is *not discretionary* with the Administrator." § 7604(a)(2) (emphasis added). Plaintiffs contend the Administrator has a nondiscretionary duty to issue revised ozone regulations under § 166(a) of the Clean Air Act, 42 U.S.C. § 7476(a). The district court held that the statute permits, but does not require, the Administrator to issue such regulations and therefore dismissed plaintiffs' claim for lack of subject matter jurisdiction. To facilitate immediate appeal, the court granted plaintiffs' request to enter final judgment on that claim under Federal Rule of Civil Procedure 54(b).

The only issue on appeal is whether plaintiffs have adequately alleged the violation of a nondiscretionary duty. Before we discuss the parties' competing interpretations of § 166(a), a brief summary of the relevant regulatory scheme is necessary.

When Congress enacted the Clean Air Act Amendments of 1970, it required EPA to identify pollutants that "cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7408(a)(1)(A). For each such pollutant, Congress required EPA to issue national ambient air quality standards (NAAQS). § 7409(a)(1)(A). To oversimplify a bit, NAAQS set limits on the permissible concentrations of regulated pollutants in the ambient air.

In 1971, EPA issued NAAQS for six pollutants: particulate matter, sulfur dioxide, photochemical oxidants, hydrocarbons, carbon monoxide, and nitrogen dioxide. 36 Fed. Reg. 8186, 8186 (Apr. 30, 1971). The term "photochemical oxidants" includes ozone, and in 1979 EPA

formally changed the chemical designation for the relevant NAAQS to "ozone." 44 Fed. Reg. 8202, 8202 (Feb. 8, 1979). For our purposes, "photochemical oxidants" and "ozone" refer to the same thing.

On August 7, 1977, Congress added a new program to the Clean Air Act, known as the Prevention of Significant Deterioration (PSD) program. Clean Air Act Amendments of 1977, Pub. L. No. 95–95, 91 Stat. 685. As its name implies, the PSD program is designed to prevent air quality from significantly deteriorating in areas that already have relatively clean air. The program thus applies to "attainment" areas, meaning areas that meet the NAAQS for a given pollutant, and "unclassifiable" areas, meaning areas for which insufficient data exists to determine whether the NAAQS for a given pollutant have or have not been met. 42 U.S.C. § 7471; *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 470–71 (2004).

As part of the newly enacted PSD program, Congress added § 166 of the Clean Air Act, the statute at issue here. Subsection (a) requires EPA to issue regulations implementing the PSD program. It provides in full:

> (a) Hydrocarbons, carbon monoxide, photochemical oxidants, and nitrogen oxides
>
> In the case of the pollutants hydrocarbons, carbon monoxide, photochemical oxidants, and nitrogen oxides, the Administrator shall conduct a study and not later than two years after August 7, 1977, promulgate regulations to prevent the significant deterioration of air quality which would result from the emissions

of such pollutants.  In the case of pollutants for which national ambient air quality standards are promulgated after August 7, 1977, he shall promulgate such regulations not more than 2 years after the date of promulgation of such standards.

42 U.S.C. § 7476(a).

Both the first and second sentences of this provision unquestionably impose nondiscretionary duties on the Administrator.  The first sentence required the Administrator to promulgate PSD regulations for the four listed pollutants no later than August 7, 1979.  The parties agree that this duty has long since been discharged.  The focus of this appeal is therefore on the duty imposed by the second sentence.  That sentence, too, requires the Administrator to promulgate PSD regulations, but the precise scope of the nondiscretionary duty it imposes depends on how broadly or narrowly one interprets the sentence.

We'll begin with the narrow interpretation, which is the one EPA favors.  Read together, the first and second sentences of § 166(a) could be construed as referring to two mutually exclusive sets of pollutants: pollutants for which NAAQS had already been promulgated as of August 7, 1977 (first sentence), and pollutants for which NAAQS would not be promulgated until sometime later (second sentence). Under that reading, the second sentence would impose a nondiscretionary duty, but a one-time duty of limited scope: to promulgate PSD regulations within two years after NAAQS are first issued for a *newly regulated* pollutant. Since ozone is one of the already regulated pollutants covered

by the first sentence, EPA argues, the mandatory duty imposed by the second sentence simply doesn't apply here.

Plaintiffs, of course, urge us to reject that reading. They contend the second sentence should be read more broadly to cover *all* pollutants. Read in that fashion, the second sentence would impose a nondiscretionary duty to promulgate PSD regulations not only when NAAQS are first issued for a newly regulated pollutant, but also when NAAQS are *revised* for any pollutant, including the four mentioned in the first sentence. Because EPA revised the NAAQS for ozone on March 27, 2008, plaintiffs argue, the agency had a nondiscretionary duty to promulgate revised PSD regulations for ozone within two years of that date. It is undisputed that EPA did not do so, and in fact still has not done so.

If our task were to decide which of these two readings of the statute is correct, this might be a hard case, since both appear plausible. On the one hand, the narrow reading is plausible given the parallel structure of the first and second sentences. The first sentence begins, "In the case of the [four named pollutants]"; the second begins, "In the case of pollutants for which [NAAQS] are promulgated after August 7, 1977. . . ." The repeated use of the phrase "In the case of" suggests that the drafters intended the first sentence to address one set of circumstances and the second sentence to address another. That inference is strengthened by the fact that, as of August 7, 1977, the only pollutants then subject to NAAQS for which PSD regulations would be required were the four listed in the first sentence. (There were two additional pollutants for which NAAQS had already been issued—particulate matter and sulfur dioxide—but EPA didn't need to promulgate PSD regulations for them because Congress itself had established the initial PSD requirements

in a separate statutory provision. *See* 42 U.S.C. § 7473.) It's thus easy to see why those drafting the statute in 1977 might have used the phrase "pollutants for which [NAAQS] are promulgated after August 7, 1977" to distinguish the set of as-yet-unregulated pollutants covered by the second sentence from the distinct set of already regulated pollutants covered by the first. While the text might have been clearer had the second sentence referred to "other pollutants not covered by the first sentence," or "pollutants for which NAAQS are *first* promulgated after August 7, 1977," the drafters could have understood the language they chose as already drawing that distinction.

On the other hand, plaintiffs' broad reading of the second sentence—as encompassing *all* pollutants and imposing a mandatory duty to revise the PSD regulations each time the NAAQS are revised—is plausible as well. As plaintiffs point out, it would have been sensible for Congress to conclude that whenever the NAAQS for a given pollutant are revised, the corresponding PSD regulations should be revised too, since new information that justifies revisions to the NAAQS would likely justify revisions to the PSD requirements. (EPA has historically calculated PSD requirements by calibrating them to the NAAQS governing each pollutant. *See* 75 Fed. Reg. 64,864-01, 64,869 (Oct. 20, 2010).) But even if Congress held that view, it doesn't strike us as irrational or absurd, as plaintiffs suggest, for Congress to have created a regulatory scheme predicated on the narrow reading of § 166(a). Congress could have been content to kick-start the PSD program by mandating EPA's promulgation of initial PSD regulations, but then have left to the agency's discretion the responsibility for making whatever revisions to those regulations might be warranted when the corresponding NAAQS were revised.

In the end, we don't have to decide which of these conflicting interpretations of § 166(a) is correct, because our cases have adopted what amounts to a clear statement rule in this context.  When a plaintiff sues the EPA Administrator for failure "to perform any act or duty under this chapter which is not discretionary with the Administrator," 42 U.S.C. § 7604(a)(2), we have held that the nondiscretionary nature of the duty must be clear-cut—that is, readily ascertainable from the statute allegedly giving rise to the duty.  *Our Children's Earth Found. v. EPA*, 527 F.3d 842, 851 (9th Cir. 2008) (interpreting the Clean Water Act's similar citizen-suit provision); *see also Farmers Union Cent. Exch., Inc. v. Thomas*, 881 F.2d 757, 760 (9th Cir. 1989).  We must be able to identify a "specific, unequivocal command" from the text of the statute at issue using traditional tools of statutory interpretation; it's not enough that such a command could be teased out "from an amalgamation of disputed statutory provisions and legislative history coupled with the EPA's own earlier interpretation." *Our Children's Earth*, 527 F.3d at 851 (internal quotation marks omitted).

Given § 166(a)'s ambiguity, we cannot say that the existence of a nondiscretionary duty to promulgate revised PSD regulations for ozone is clear-cut or readily ascertainable from the statute.  That is enough to preclude plaintiffs' reliance on § 7604(a)(2) as the jurisdictional basis for their suit.  The district court therefore correctly dismissed plaintiffs' claim under the Clean Air Act's citizen-suit provision for lack of subject matter jurisdiction.

**AFFIRMED.**