WALLACE, Circuit Judge,
concurring in part and dissenting in part:
I agree that the text of AR 70-25 unequivocally commands the Army to provide certain newly acquired information to all former research volunteers when that information becomes available. Because the Army has “unlawfully withheld” agency action by denying that it owes this duty to certain past volunteers, I join the majority in affirming the district court’s judgment and injunction compelling the Army to comply with AR 70-25’s clear regulatory mandate. See 5 U.S.C. § 706(1). I write separately in concurrence on this point only because I do not join the majority’s analysis of regulatory history to support its textual analysis.
I dissent, however, from the majority’s conclusion that AR70-25 also contains a “specific, unequivocal command” that the Army provide medical care to former research volunteers. I would affirm the district court’s decision to grant summary judgment against Plaintiffs on their claims for medical care, but on the alternative ground that their claim is not judicially enforceable under section 706(1) of the Administrative Procedure Act (APA).
I.
“Section 706(1) of the APA ... serves important interests, but [it] does not give us license to ‘compel agency action’ whenever the agency is withholding or delaying an action we think it should take.” Hells Canyon Pres. Council v. U.S. Forest Serv., 593 F.3d 923, 932 (9th Cir.2010). Rather, our authority to “compel agency action” is “carefully circumscribed to situations where an agency has ignored a specific ... command,” id., that is located in a federal statute or “agency regulation[ ] that ha[s] the force of law,” Norton v. S. Utah Wilderness Alliance (SUWA), 542 U.S. 55, 65, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004). Moreover, the “purportedly withheld action must not only be ‘discrete,’ ” Hells Canyon, 593 F.3d at 932, meaning that it must be a “precise, definite act,” SUWA, 542 U.S. at 63, 124 S.Ct. 2373, “but also ‘legally required,’ ” 593 F.3d at 932, mean *1137 ing that the text of the statute or regulation contains an “unequivocal command” about which an official has “no discretion whatever,” 542 U.S. at 63, 124 S.Ct. 2373 (internal quotation marks omitted), such that the duty “could traditionally have been enforced through a writ of mandamus.” Hells Canyon, 593 F.3d at 932.
A.
Our analysis must focus exclusively on the text of the relevant statutes or regulations to determine whether this standard is satisfied. This purely textual approach, amounting to a “clear-statement rule,” is not unique to the section 706(1) context. It is indispensable whenever a statute requires us to determine whether a particular text obligates agency actors to assume a specific duty or to perform a discrete act.
Like an action brought under section 706(1) of the APA, for example, a citizen suit may be brought under section 505(a)(2) of the Clean Water Act only where plaintiffs “allege[] a failure of the [EPA] Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.” 33 U.S.C. § 1365(a)(2). If plaintiffs are to succeed in their citizen suit against the Administrator, we have held that “the non-discretionary nature of the duty must be clear-cut — that is, readily ascertainable from the statute allegedly giving rise to the duty.” WildEarth Guardians v. McCarthy, 772 F.3d 1179, 1182 (9th Cir.2014). In other words, “[w]e must be able to identify a ‘specific, unequivocal command’ from the text of the statute at issue using traditional tools of statutory interpretation; it’s not enough that such a command could be teased out ‘from an amalgamation of disputed statutory provisions and legislative history coupled with the [agency’s] own earlier interpretation.’ ” Id. (emphasis added), quoting Our Children’s Earth Found. v. E.P.A., 527 F.3d 842, 851 (9th Cir.2008) (stating that plaintiffs must “point to a nondiscretionary duty that is readily-ascertainable and not only [] the product of a set of inferences based on the overall statutory scheme” (alteration in original) (internal quotation marks omitted)).
B.
Because our inquiry under section 706(1) is necessarily limited to whether the text of the relevant Army regulations states a specific, unequivocal command to take discrete agency action, I cannot join the majority’s perusal of “internal agency discussions in the years leading up to the 1988 and 1990 revisions of [AR 70-25],” nor its discussion of the Army’s creation of volunteer databases in 1981 and 1986. The majority includes these historical observations because it believes they support our reading of AR 70-25. They do, of course, but that is irrelevant. Our job is to determine only whether a statute or regulation itself objectively creates a mandatory duty. As we have previously held, it is inappropriate “for us to divine a ‘specific, unequivocal command,’ from an amalgamation of disputed statutory provisions and legislative history coupled with the [agency’s] own earlier interpretation.” Our Children’s Earth Found., 527 F.3d at 851, quoting SUWA, 542 U.S. at 63, 124 S.Ct. 2373. To be sure, the majority does not rely exclusively — or even chiefly — on non-textual sources in concluding that the Army has an unequivocal duty to warn. But by including a discussion of regulatory history and historical facts in support of its textual analysis, the majority improperly suggests that these extra-textual sources and observations have some bearing on whether we are authorized to compel unlawfully withheld agency action under section 706(1). I write separately to dispel any doubt: they do not. I thus join in the result but not that part of the majority’s analysis.
*1138 II.
I dissent from the majority’s conclusion that AR 70-25 creates an unequivocal duty for the Army, enforceable under section 706(1), to provide medical care to former research volunteers. As stated above, the Supreme Court’s standard under section 706(1) for compelling agency action is demanding. See SUWA, 542 U.S. at 63, 124 S.Ct. 2373. We ourselves have explained that we can compel agency action only when the legal obligation is “so clearly set forth that it could traditionally have been enforced through a writ of mandamus.” Hells Canyon, 593 F.3d at 932.
Only two provisions of AR 70-25, as promulgated in 1988, could potentially provide the basis for a judicially enforceable duty to provide medical care. Neither does.
A.
1.
The first is Chapter 3—1(k) (subsection (k)), which provides, “Volunteers are authorized all necessary medical care for injury or disease that is a proximate result of their participation in research.” This subsection is not an “unequivocal command” to provide medical care. That is, while the authorization in subsection (k) certainly removes a barrier to volunteers’ receipt of medical care — making it clear, at least, that volunteers should not be denied medical care for lack of authorization — it does not clearly require the Army to provide medical care. This is a far cry from the typical mandatory language we usually require in section 706(1) cases. See Rivas v. Napolitano, 714 F.3d 1108, 1111 (9th Cir.2013) (observing that “[t]he mandatory language used in the regulation makes the act of reconsideration non-discretionary”).
The majority, of course, believes the more “natural reading” of the word “authorized” is that “the volunteers are entitled to receive the ‘necessary medical care’ specified in the subsection.” But regardless of how “natural” the majority believes its reading to be, it is not the only plausible reading. The only thing that subsection (k) makes clear is that volunteers are authorized to receive medical care, which is one or two logical steps away from the majority’s conclusion that the Army has a legal obligation to provide them with that medical care. Although it is possible to read into the text of subsection (k) the assumption that the authorization is the only thing volunteers need in order to be entitled to medical care, and the assumption that the Army has a duty to provide medical care to anyone who is entitled to it, it is also possible to read the text of subsection (k) without those assumptions. Because the text is reasonably open to interpretation, it does not state an unequivocal command.
The majority derives no legitimate support for its position from examining the now-defunct 1962 and 1974 versions of AR 70-25. For the reasons stated in Part I of my separate opinion, this history is simply irrelevant to the textual analysis the Supreme Court requires us to undertake when analyzing a section 706(1) claim. SUWA, 542 U.S. at 63, 124 S.Ct. 2373.
2.
Subsection (k)’s “authorization” for medical care, in addition to not being legally required, also is not discrete agency action. Discrete agency action for purposes of section 706(1) is a “precise, definite act,” like the promulgating of a rule or the taking of some decision by a statutory deadline. SUWA, 542 U.S. at 63, 124 S.Ct. 2373. The phrase “[v]olunteers are authorized all necessary medical care for injury or disease that is a proximate result of their participation in research,” does not qualify as “the ordering of a ‘precise, definite act ... about which [an official] ha[s] no dis *1139 cretion whatever.’ ” Id. This is most easily demonstrated by comparing subsection (k) to subsection (h) — the “duty to warn” subsection — which does command discrete agency action.
Subsection (h) unambiguously identifies which agency or officers (“Commanders”; “MACOM”) are “legally required” (“have an obligation”-, “must establish”) to perform a “discrete action,” (“provide [volunteers] with any newly acquired information”) which is described “precisely]” and “definite[ly]”:
• What: “information that may affect their wellbeing”;
• When: “when [it] becomes available” and “even after the individual volunteer has completed his or her participation in research”;
• To Whom: “research volunteers”— “[t]o accomplish this, [the Army] must establish a system which will permit identification of volunteers who have participated in research ... and take actions to notify volunteers of newly acquired information.”
Subsection (k), in contrast, leaves us to guess at which agency officer is obligated to provide the medical care (assuming, of course, that “authorized” means “required” — it does not), what such medical care would consist of, or when and how long medical care must be provided (only during research? only in “emergency” situations? forever?). As a result, subsection (k) “lack[s] the specificity requisite for agency action.” SUWA, 542 U.S. at 66, 124 S.Ct. 2373.
B.
Only one other provision of AR 70-25 could possibly provide the basis for a judicially enforceable duty to provide medical care: Chapter 2 — 5(j) (subsection (j)). Subsection (j) provides, “The Surgeon General ... will ... [d]irect medical followup, when appropriate, on research subjects to ensure that any long-range problems are detected and treated.” Subsection (j), like subsection (k), lacks the usual language of obligation. Subsection (j) contemplates action by the Army Surgeon General only “when appropriate.” That grant of discretion prevents us from concluding that this language represents a “specific, unequivocal command” directing the Surgeon General to provide medical care.
C.
For these reasons I would affirm the district court’s summary judgment against Plaintiffs on their claims for medical care, but on the alternative ground that their claim is not judicially enforceable under section 706(1) of the APA.
I am not unsympathetic to the notion that those who have served our country— especially those who have risked their health and well-being in that service— should have access to appropriate medical care. However, the Supreme Court has counseled us, and we have recognized, that “[e]ven if a court believes that the agency is withholding or delaying an action the court believes it should take, the ‘ability to compel agency action is carefully circumscribed to situations where an agency has ignored a specific legislative command.’ ” Gardner v. U.S. Bureau of Land Mgmt., 638 F.3d 1217, 1221-22 (9th Cir.2011), quoting Hells Canyon, 593 F.3d at 932. “As much as we as citizens are concerned with the plight of veterans seeking the prompt provision of the health care and benefits ... as judges we may not exceed our jurisdiction.” Veterans for Common Sense v. Shinseki, 678 F.3d 1013, 1016 (9th Cir.2012) (en banc). I am therefore compelled to dissent from this part of the majority opinion.