# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 7, 2011            Decided July 1, 2011

No. 10-5280

SIERRA CLUB AND VALLEY WATCH, INC.,
APPELLANTS

v.

LISA PEREZ JACKSON, IN HER OFFICIAL CAPACITY AS
ADMINISTRATOR, UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-02089)

*Robert Ukeiley* argued the cause and filed the briefs for appellants.

*John E. Arbab*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief was *Katherine J. Barton*, Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: SENTELLE, *Chief Judge*, GINSBURG and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* SENTELLE.

SENTELLE, *Chief Judge*: Appellants, nonprofit environmentalist organizations, appeal from a judgment of dismissal entered by the district court in an action against the United States Environmental Protection Agency ("EPA") under the citizen suit provision of the Clean Air Act, challenging the Administrator's failure to take action to prevent the construction of three proposed pollution-emitting facilities in Kentucky. The district court held that there was no mandatory duty to act and granted the EPA's motion to dismiss for lack of subject matter jurisdiction. The nonprofits brought the present appeal. We affirm the dismissal on different grounds.

I.

The Clean Air Act ("the Act"), 42 U.S.C. §§ 7401 *et seq.*, creates a complex regulatory regime designed "to protect and enhance the quality of the Nation's air resources." § 7401(b)(1). As part of that regime, the Act empowers the Administrator of the EPA to establish National Ambient Air Quality Standards ("NAAQS"), setting allowable concentrations of air pollutants determined by the Administrator to meet statutorily defined criteria. §§ 7408-09. In furtherance of the attainment of the National Ambient Air Quality Standards, the Act requires each state to develop a State Implementation Plan ("SIP") by which the state will achieve, maintain, and enforce those standards. § 7410. The Administrator is to designate areas of a state meeting the applicable ambient air quality standard as "attainment" areas. § 7407(d)(1)(A)(ii). The Act further requires states to prevent "significant deterioration" of air quality in attainment areas. §§ 7470 *et seq.* In furtherance of this goal, the Act requires, *inter alia*, that no major emitting facility may be constructed in an attainment area without a permit meeting the requirements of the Act. § 7475.

Section 7477, entitled "Enforcement," states that "[t]he Administrator shall, and a State may, take such measures, including issuance of an order, or seeking injunctive relief, as necessary to prevent the construction or modification of a major emitting facility . . . proposed to be constructed" in an attainment area. The present controversy involves three major emitting facilities proposed to be built in attainment areas in Kentucky.

## II.

The three projects underlying this litigation are the East Kentucky Power Cooperative's J.K. Smith Generating Station coal-fired CFB Boiler Project ("Smith"), Conoco Phillips and Peabody's Kentucky NewGas Synthetic Natural Gas Production plant ("NewGas"), and Cash Creek Generation LLC's coal-fired Cash Creek Generating Station ("Cash Creek"). Because each facility qualifies as a "major emitting facility," *see* § 7479(1), and because each is proposed to be built in a county designated as an attainment area, all three facilities are required to obtain permits from the State of Kentucky. § 7475(a). The permits are part of the statutory Prevention of Significant Deterioration ("PSD") program implementing the requirements of § 7475(a).

Kentucky granted PSD permits to each facility prior to September 15, 2010. That fact is significant because until that date, the Kentucky State Implementation Plan failed to meet the requirements of the Clean Air Act's PSD regulations. In 1989 the EPA approved the PSD permitting program in effect in Kentucky prior to September 15, 2010. *See* Approval and Promulgation of Implementation Plans, Kentucky, 54 Fed. Reg. 36,307 (Sept. 1, 1989). In 1997, the EPA amended the federal NAAQS to revise the nation's standards for ozone, *see* National Ambient Air Quality Standards for Ozone, 62 Fed. Reg. 38,856 (July 18, 1997), and in 2005 the EPA required those new ozone

standards to be incorporated in each state's SIP, *see* Final Rule to Implement the 8-Hour Ozone NAAQS, 70 Fed. Reg. 71,612 (Nov. 29, 2005). Included in the 2005 EPA regulation was a requirement that state PSD programs regulate nitrogen oxides, or NOx, as an ozone precursor in attainment areas. 70 Fed. Reg. at 71,679. Despite the 2005 mandate, until September 15, 2010, Kentucky's State Implementation Plan failed to incorporate the 1997 ozone NAAQS or to regulate NOx as a precursor to ozone under its PSD program. Therefore, the Smith, NewGas, and Cash Creek facilities do not comply with § 7475(a), which forbids the construction of such facilities absent a PSD permit meeting the requirements of the Clear Air Act.

When neither the Administrator nor the state took action to prevent the construction of the nonconforming major emitting facilities, appellants, two environmentalist nonprofits (collectively referred to as "Sierra Club"), brought the present action under 42 U.S.C. § 7604(a)(2), which provides for the filing of citizen suits against the Administrator for her alleged failure to perform any nondiscretionary duty under the Act. Arguing that her duty under § 7477 was discretionary, and therefore beyond the reach of the statute, the Administrator moved for dismissal. Agreeing with the Administrator, the district court ruled that the Administrator's decision not to exercise her statutory duty was discretionary, and thus not subject to judicial review. *Sierra Club v. Jackson*, 724 F. Supp. 2d 33 (D.D.C. 2010). The district court entered a judgment of dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction. Sierra Club brought the present appeal.

III.

Before we can consider the merits of the Sierra Club's appeal, we must first ensure that we have jurisdiction to do so. Article III of the Constitution limits the federal courts to

adjudication of actual, ongoing controversies. *Honig v. Doe*, 484 U.S. 305, 317 (1988). "It has long been settled that a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). "Accordingly, if an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." *Beethoven.com LLC v. Librarian of Cong.*, 394 F.3d 939, 950 (D.C. Cir. 2005) (quoting *Mills*, 159 U.S. at 653)).

In this case, the Administrator advances two mootness arguments. First, the Administrator asserts that because Kentucky rescinded the East Kentucky Power Cooperative's authorization to construct and operate the Smith facility, there is no longer a live controversy regarding this facility. As the Sierra Club admitted in its brief, "there is currently no need for EPA to prevent construction of Smith." Br. for App. at 3. Although the Sierra Club suggested that its appeal with regard to the Smith facility was not moot because it qualifies for the "issue capable of repetition yet evading review" exception, it essentially conceded the issue at oral argument. Or. Arg. 3:24–30. ("There are three plants and one of the plants is gone, so it is moot."). We agree. The appeal is moot with respect to the Smith facility.

The Administrator's first mootness argument does not apply to the other two facilities, as their permits remain in effect and they remain in proposed-to-be-constructed status. Nonetheless, the Administrator argues that the controversy concerning their construction is moot as well. In her view, the proposed facilities are no longer out of compliance with § 7475(a). She bases this contention on the fact that the previously nonconforming SIP

has been in compliance since September 15, 2010. Therefore, the Administrator argues, the projects no longer fall within the prohibition of § 7475(a) as they are not proposed to be built in attainment areas that are *currently* "not subject to an implementation plan which meets the requirements of this part [of the Clean Air Act]." 42 U.S.C. § 7477. Thus, she contends, even if § 7477 does create a mandatory duty, that section is no longer applicable. She further contends that because the statute no longer applies, any opinion on her duty under the previous regime would be purely advisory.

Sierra Club offers two responses to the second mootness argument. First, it contends that Kentucky's newly achieved compliance is irrelevant because Kentucky issued the PSD permits in question under the prior non-compliant Kentucky State Implementation Plan. Those permits, it contends, do not meet the standards imposed by § 7475 as compliance with that statute should be judged at the time of the issuance rather than some subsequent date. In Sierra Club's view, if there is to be a compliant permit for a facility, that permit must issue under a compliant plan.

Secondly, Sierra Club asserts that the Kentucky SIP suffers from a further defect not rectified by the September 15, 2010 final rule. It contends that the Clean Air Act's PSD program requires public notice of the impact that a new source of air pollution will have on air quality standards in nearby Class I areas, such as wilderness and national parks. The Kentucky Plan, on the other hand, requires notice only for Class I areas located in the same county as the proposed source, and therefore there was no published public notice to describe the impact that the new facilities would have on other nearby Class I areas. In short, Sierra Club argues, this case still presents a live controversy because even as currently amended the Kentucky Plan does not conform to the notice requirements of the Clean

Air Act.

Without passing on the merits of Sierra Club's contentions, we agree that the question of the validity of the PFD permits issued under the noncompliant SIP and the possible invalidity of the amended SIP raise sufficient current controversy to save this litigation from mootness as to the NewGas and Cash Creek facilities.

IV.

Although we hold that we do not lose jurisdiction over this controversy by reason of mootness, this does not resolve the jurisdictional theory upon which the district court relied in dismissing the case under Rule 12(b)(1) for lack of subject matter jurisdiction. *Sierra Club*, 724 F. Supp. 2d at 42-43. The district court's ruling was based on the proposition that the Administrator's decision was discretionary and therefore not justiciable. Before this court, Sierra Club, which certainly does not concede that the district court should have dismissed the claim at all, argues that the analysis should have been under Rule 12(b)(6) to determine whether the complaint failed to state a claim upon which relief could be granted rather than under the jurisdictional standards of Rule 12(b)(1). While it does not in the end affect the outcome, we ultimately agree that Rule 12(b)(6) should govern. We hasten to state that we do not fault the district court for basing its dismissal on Rule 12(b)(1) rather than Rule 12(b)(6). The distinction between a claim that is not justiciable because relief cannot be granted upon it and a claim over which the court lacks subject matter jurisdiction is important. But we cannot fault the district court, as this court "ha[s] not always been consistent in maintaining these distinctions." *Oryszak v. Sullivan*, 576 F.3d 522, 527 (D.C. Cir. 2009) (Ginsburg, J., concurring). Indeed, we have provided authority both that discretionary duty claims fall outside our

jurisdiction, and that such claims are nonjusticiable under Rule 12(b)(6). In *Association of Irritated Residents v. EPA*, we held that agency decisions excluded from judicial review by 5 U.S.C. § 701(a)(2) are outside the court's jurisdiction. 494 F.3d 1027, 1030 (D.C. Cir. 2007) ("In this case, subject matter jurisdiction turns on whether the Agreement constitutes a rulemaking subject to APA review, or an enforcement proceeding initiated at the agency's discretion and not reviewable by this court."). Two years later, in *Oryszak v. Sullivan*, we came to a different conclusion. Without any reference to *Association of Irritated Residents*, we stated:

> Because the APA does not apply to agency action committed to agency discretion by law, a plaintiff who challenges such an action cannot state a claim under the APA. Therefore, the court has jurisdiction over his case pursuant to § 1331, but will properly grant a motion to dismiss the complaint for failure to state a claim.

*Oryszak*, 576 F.3d at 525.

It is fixed law that "this Court is bound to follow circuit precedent until it is overruled either by an *en banc* court or the Supreme Court." *Maxwell v. Snow*, 409 F.3d 354, 358 (D.C. Cir. 2005). Therefore, when a decision of one panel is inconsistent with the decision of a prior panel, the norm is that the later decision, being in violation of that fixed law, cannot prevail. However, that is not the case with *Oryszak* and *Association of Irritated Residents*. *Association of Irritated Residents* is in fact inconsistent with preexisting precedent. In *Trudeau v. FTC,* 456 F.3d 178 (D.C. Cir. 2006), we addressed whether the finality requirement contained in § 704 of the APA was jurisdictional. Noting the Supreme Court's holding in *Califano v. Sanders* that "the APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action," 430 U.S. 99, 107 (1977), we held that

the finality requirement was not jurisdictional.  We reasoned "[b]ecause § 704's declaration that final agency action is 'subject to judicial review' is not a grant of jurisdiction, even if we were to infer by negative implication that agency conduct not amounting to final agency action is not 'reviewable,' that inference would not deprive a federal court of any jurisdiction it otherwise has."  456 F.3d at 183-84.  We expressly rejected the proposition that "'the presence of final agency action is a jurisdictional issue.'"  *Id*. at 183 (quoting *Trudeau v. FTC*, 384 F. Supp. 2d 281, 294 n.13 (D.D.C. 2005)).

Although *Association of Irritated Residents* and *Trudeau* concerned different sections of the APA—section 701(a)(2) rather than section 704—our opinion in *Trudeau* should have guided our deliberations in *Association of Irritated Residents* as it did later in *Oryszak*.  Therefore, following the norm that the older case remains undisturbed by the later, it is *Trudeau* and not *Association of Irritated Residents* that provides precedent for our current review.  Applying *Oryszak* and *Trudeau*, we conclude that a complaint seeking review of agency action "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), has failed to state a claim under the APA, and therefore should be dismissed under Rule 12(b)(6), not under the jurisdictional provision of Rule 12(b)(1).  *Oryszak*, 576 F.3d at 525.  Nonetheless, if the district court was correct in dismissing the action as a nonjusticiable challenge to discretionary agency action, it is within our power to affirm despite the citation of the wrong rule.  As we have previously held, "[a]lthough the district court erroneously dismissed the action pursuant to Rule 12(b)(1), we could nonetheless affirm the dismissal if dismissal were otherwise proper based on failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)."  *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir.1997).

With the threshold questions behind us, we now consider the merits of the district court's dismissal of the complaint, now guided by the provisions of Rule 12(b)(6). We review that decision *de novo* and, like the district court, accept the factual allegations in the complaint as true. *Jerome Stevens Pharm. v. EPA*, 402 F.3d 1249, 1250 (D.C. Cir. 2005).

The judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06, establish a cause of action for parties adversely affected either by agency actions or by an agency's failure to act. *Heckler v. Chaney*, 470 U.S. 821, 828 (1985); *see* 5 U.S.C. § 551(13) (defining "agency action" as including an agency's failure to act). However, the APA explicitly excludes from judicial review those agency actions that are "committed to agency discretion by law." 5 U.S.C. § 701(a). The Supreme Court has specified at least two occasions in which that exclusion applies: "[I]n those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (quotation marks and citations omitted), and when "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," *Chaney*, 470 U.S. at 830. Agency actions in these circumstances are unreviewable because "'the courts have no legal norms pursuant to which to evaluate the challenged action, and thus no concrete limitations to impose on the agency's exercise of discretion.'" *Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C. Cir. 2006) (quoting *Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002)).

To determine whether a matter has been committed to agency discretion, we "'consider both the nature of the administrative action at issue and the language and structure of the statute that supplies the applicable legal standards for

reviewing that action.'" *Twentymile Coal*, 456 F.3d at 156 (quoting *Drake*, 291 F.3d at 70). Furthermore, in cases that involve agency decisions not to take enforcement action, we begin with the presumption that the agency's action is unreviewable. *Ass'n of Irritated Residents*, 494 F.3d at 1031; *see Chaney*, 470 U.S. at 831-32. This presumption is not absolute and "may be rebutted where the relevant statute supplies meaningful standards to cabin the agency's otherwise plenary discretion." *Drake*, 291 F.3d at 71; *see Chaney*, 470 U.S. at 832-33 ("[W]e emphasize that the decision is only presumptively unreviewable; the presumption may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers."). On the other hand, if the statute in question does not "give any indication that violators must be pursued in every case, or that one particular enforcement strategy must be chosen over another" and if it provides no meaningful guidelines defining the limits of the agency's discretion, then enforcement is committed to the agency's discretion. *Ass'n of Irritated Residents*, 494 F.3d at 1033 (citing *Chaney*, 470 U.S. at 834-35).

In this case, the Sierra Club argues that the district court erred when it held that § 7477 does not place a mandatory, judicially-reviewable duty upon the EPA Administrator. The Sierra Club asserts that the express language of § 7477, specifically the close juxtaposition of the mandatory "the Administrator shall" with the permissive "the State may," establishes that Congress intended to strip the Administrator of discretion. The crux of the Sierra Club's argument is that the plain text of § 7477 makes enforcement by the Administrator mandatory and subjects the Administrator's decision not to enforce to judicial review.

The Sierra Club's textual argument carries considerable weight. As we have repeatedly noted, "shall" is usually

interpreted as "the language of command." *See, e.g.*, *Zivotofsky v. Sec'y of State*, 571 F.3d 1227, 1243 (D.C. Cir. 2009) (quoting *Escoe v. Zerbst*, 295 U.S. 490, 493 (1935)); *Allied Pilots Ass'n v. Pension Benefit Guar. Corp.*, 334 F.3d 93, 98 (D.C. 2003); *Southwestern Bell Corp. v. FCC*, 43 F.3d 1515, 1521 (D.C. Cir. 1995). In addition, when a statute "uses both 'may' and 'shall,' the normal inference is that each is used in its usual sense—the one act being permissive, the other mandatory." *Oljato Chapter of the Navajo Tribe v. Train*, 515 F.2d 654, 662 (D.C. Cir. 1975) (quoting *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947)). We cannot, however, consider those words in isolation. We must also consider the language and structure of the statute to determine whether the Administrator retained discretion in the statutory duty so as to render her decision unreviewable. *See Twentymile Coal*, 456 F.3d at 156.

Upon examination of the context and structure of § 7477, we agree with the Administrator that she had sufficient discretion to render her decision not to act nonjusticiable. Congress's mandate to the Administrator is that she shall "take such measures, including issuance of an order, or seeking injunctive relief, as necessary . . . ." There is no guidance to the Administrator or to a reviewing court as to what action is "necessary." Granted, the statute further says, "as necessary to prevent the construction or modification of a major emitting facility . . . proposed to be constructed" in an attainment area, but that nonetheless leaves it to the Administrator's discretion to determine what action is "necessary." Where, as here, the Administrator is satisfied that the PSD permit issued under the noncompliant SIP is sufficient, then she has apparently made the decision that no action is necessary. In more general terms, agencies must regularly determine what action, if any, they should take, depending on numerous factors, including "whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the

particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all." *Chaney*, 470 U.S. at 831. Congress can limit an agency's discretion "either by setting substantive priorities, or by otherwise circumscribing an agency's power to discriminate among issues or cases it will pursue." *Id.* at 833. Given the broad range of options open to the Administrator and the strength of the precedent from *Chaney*, in the context of § 7477, the use of the mandatory "shall" is not sufficient to provide legal standards for judicial review of the Administrator's decision not to act.

Section 7477 satisfies both *Overton Park*'s description of a statute "drawn in such broad terms that in a given case there is no law to apply," 401 U.S. at 410 (internal quotations and citation omitted), and *Chaney*'s description of a statute "drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," 470 U.S. at 830. Furthermore, § 7477 does not indicate that one enforcement measure should be chosen over another or otherwise provide guidelines that define the limits of the Administrator's discretion. *See Ass'n of Irritated Residents*, 494 F.3d at 1033. We conclude, therefore, that the APA does not provide a cause of action to review the Administrator's failure to act under § 7477 because her decision is an agency action "committed to agency discretion by law." *See* 5 U.S.C. § 701(a)(2).

## CONCLUSION

For the foregoing reasons, the Sierra Club failed to state a claim upon which relief could be granted. Although the district court dismissed the case pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, we affirm the district court's action because dismissal would

otherwise have been proper under Rule 12(b)(6). *See St. Francis Xavier Parochial Sch.*, 117 F.3d at 624.

*So ordered.*