SENTELLE, Senior Circuit Judge,
with whom Senior Circuit Judge EDWARDS joins,
concurring:
I concur in the decision of the majority, not because I believe it to be the correct result, but because I am compelled to do so by precedent. Boiling the controversy down to its essence, the answer to one two-part question determines the result: Does the attorney work-product privilege protected by FOIA Exemption 5 protect only information prepared in anticipation of litigating a specific claim; and if not, does it extend far enough to encompass a text prepared for the education of attorneys who may in the future be generally involved in litigation? The majority, I believe correctly, opines that this circuit has answered that question in Schiller v. NLRB, 964 F.2d 1206 (D.C. Cir. 1992), and has further restated the answer in In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998). In this case, we consider a manual prepared for internal use of the Department of Justice concerning the important legal area of criminal litigation discovery. The manual was prepared not for use in a specific piece of litigation, but for the whole universe of cases that might be encountered by the Department’s criminal attorneys. Likewise, in Schiller, the relevant documents at issue in a FOIA proceeding were prepared to provide tips for the handling of questions that might come up in Equal Access to Justice Act litigation. 964 F.2d at 1208. In Schiller, as reiterated in In re Sealed Case, we held that the attorney work-product privilege adopted in Exemption 6 of the FOIA protected the disputed document. Id. at 1208-09. Although I think the normative and perhaps ethical implications of extending this protection to a prosecutorial manual are sufficient to give pause, I cannot see any legal difference between this case and Schiller which would permit us to reach a different result.
We are bound by the prior decisions of this circuit as much as those of the Supreme Court. See, e.g., Sierra Club v. Jackson, 648 F.3d 848, 854 (D.C. Cir. 2011) (“It is fixed law that ‘this Court is bound to follow circuit precedent until it is overruled either by an en banc court or the Supreme Court.’ ” (quoting Maxwell v. Snow, 409 F.3d 354, 358 (D.C. Cir. 2005))). Schiller, as restated in Sealed Case, held that we found the work-product privilege applicable to “lawyer-prepared documents containing tips and advice for litigating cases under the Equal Access to Justice Act.” Sealed Case, 146 F.3d at 885 (analyzing and restating Schiller). Unless and until the Supreme Court or an en banc decision by this court overrules or modifies Schiller, we must enter decisions consistent with that holding. I hope to see the day when such a reversal or modification occurs, for more than one reason.
First, I believe that Schiller was wrongly decided in the first instance. As the majority notes, the purpose in the privilege adopted into Exemption 5 is “to protect ‘the integrity of the adversary trial process itself.’ ” Maj. Op. at -745 (quoting *753 Jordan v. Dep’t of Justice, 591 F.2d 753, 775 (D.C. Cir. 1978) (en banc)). That purpose is served by allowing a litigating attorney “a ‘zone of privacy’ within which to think, plan, weigh facts and evidence .... ” Coastal States Gas Corp. v. Dep’t of Energy, 617 F.2d 854, 864 (D.C. Cir. 1980). That goal is accomplished by an exemption which protects from disclosure the litigation decisions and related information in the handling of specific litigation. I grant that it is possible to interpret Exemption 5 broadly; that does not mean it is appropriate to do so. The exemptions to FOIA are “explicitly made exclusive ... and must be ‘narrowly construed.’ ” Milner v. Dep’t of Navy, 562 U.S. 562, 565, 131 S.Ct. 1259, 179 L.Ed.2d 268 (2011) (quoting FBI v. Abramson, 456 U.S. 615, 630, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982) (other citations and internal quotations omitted)).
Furthermore, applying the broad construction of Schiller to the case before us is inconsistent both with the statutory purpose of FOIA and the longstanding values of justice in the United States. The purpose of the Freedom of Information Act is to serve “the citizens’ right to be informed about what their government is up to.” U.S. Dep’t of Justice v. Reporters Comm, for Freedom of the Press, 489 U.S. 749, 773, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (internal quotation marks omitted). There is no area in which it is more important for the citizens to know what their government is up to than the activity of the Department of Justice in criminally investigating and prosecuting the people. The government certainly has the power to claim a FOIA exemption to hide its internal manuals describing how it goes about that awesome undertaking. But if it chooses to exercise that power, then the people might be forgiven for cynically asking “what is it you have to hide?”
Reflecting on the consistency of Schiller’s interpretation of Exemption 5 with the original statutory purposes, one may recall, as does the majority, that the exemption was to protect attorneys in litigation as under the privilege traditionally afforded in litigation itself. I cannot help but wonder if an insurance defense attorney had written a secret treatise passed around among his bar on how to defend— for example — defective product cases, would we, if that treatise became relevant in specific litigation, afford the protection of the attorney-client privilege to a document not prepared for a particular client or a particular case, but only to educate attorneys of a particular sort in the litigation of a particular kind of case? I think not. But even if we did, I do not think this would justify stretching the FOIA exemption to the point of protecting the departmental tactics and strategies in criminal prosecution from discovery by the citizenry. I cannot help but recall the words of Justice Sutherland for the Supreme Court in Berger v. United States:
The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.
*754 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).
It is often said that justice must not only be done, it must be seen to be done. Like: wise, the conduct with the U.S. Attorney must not only be above board, it must be seen to be above board. If the people cannot see it at all, then they cannot see it to be appropriate, or more is the pity, to be inappropriate. I hope that we shall, in spite of Schiller, someday see the day when the people can see the operations of their Department of Justice.
In short, I join the judgment of the majority, not because I want to, but because I have to.'