# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued December 3, 2019                    Decided April 17, 2020

No. 18-5328

SIERRA CLUB,
APPELLANT

v.

ANDREW WHEELER, ADMINISTRATOR, U.S. ENVIRONMENTAL
PROTECTION AGENCY, IN HIS OFFICIAL CAPACITY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-02461)

*Gordon E. Sommers* argued the cause for appellant. With him on the briefs was *James S. Pew*.

*Robert J. Lundman*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Jeffrey Bossert Clark*, Assistant Attorney General, *Eric Grant*, Deputy Assistant Attorney General, and *James A. Maysonett*, Attorney.

Before: HENDERSON, WILKINS and RAO, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

Concurring opinion filed by *Circuit Judge* WILKINS.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The Clean Air Act (CAA) directs the Environmental Protection Agency (EPA) to periodically issue emission guidelines for solid waste incinerators. When the EPA issues such guidelines, States have one year to submit to the EPA Administrator (Administrator) a plan to ensure incinerators within their jurisdictions comply with the guidelines. But the CAA's federal scheme cannot be undone by a noncompliant State and, should a State fail to submit a plan within *two* years of the guidelines' issuance, the CAA directs the Administrator to impose a federal plan in that State.

The EPA issued guidelines for two categories of solid waste incinerator well over two years ago and the Administrator has not imposed a federal plan on noncompliant States. Sierra Club filed a complaint in district court under the CAA's citizen-suit provision, seeking to compel the Administrator's action. The district court determined that the Administrator does not have a nondiscretionary duty to impose a federal plan on a noncompliant State and dismissed the claim for lack of subject matter jurisdiction. We affirm for the reasons set forth *infra*.

I

Toxic pollutants discharged by solid waste incinerators harm the environment and threaten human health. *See Davis Cty. Solid Waste Mgmt. v. EPA*, 101 F.3d 1395, 1397 (D.C. Cir. 1996) ("Combustion . . . results in the emission of various air pollutants, such as acid gases, organics, metals, nitrogen oxides and ash, some of which are considered to be carcinogens or to have other adverse effects when inhaled."). Section 129 of the Clean Air Act (CAA), 42 U.S.C. § 7429, therefore requires the

Administrator to "establish performance standards" for air pollutants discharged by different categories of solid waste incinerators. CAA § 129(a)(1)(A). At issue here are commercial or industrial solid waste incinerators (CISWI), *id.* § 129(a)(1)(D), and incinerators falling within the statute's catch-all for "other" categories of solid waste (OSWI), *id.* § 129(a)(1)(E). The EPA last revised its CISWI emission standards in 2013 in an action aimed to eliminate 34,771 tons of pollution annually, 78 Fed. Reg. 9112, 9131 (Feb. 7, 2013), and OSWI emission standards were last updated in 2005, 70 Fed. Reg. 74,870 (Dec. 16, 2005).

To implement these standards, the CAA distinguishes between "new" and "existing" sources. *Compare* CAA § 129(a), *with id.* § 129(b). For new incinerators, implementation of the performance standards is straightforward—any unit built or modified after the standards are promulgated must comply with them. *Id.* § 129(a)(2). More complicated is bringing existing incinerators—i.e., the large majority of regulated units neither constructed nor modified after the standards took effect, *id.* § 129(g)(4)—into compliance with new emission standards. *See* Federal Plan Requirements for Other Solid Waste Incineration Units Constructed on or Before December 9, 2004, 71 Fed. Reg. 75,816 (proposed Dec. 18, 2006); Federal Plan Requirements for Commercial and Industrial Solid Waste Incineration Units, 82 Fed. Reg. 3554 (proposed Jan. 11, 2017).

Initially, the CAA requires the Administrator to, *inter alia*, establish emission guidelines for existing incinerators. CAA § 129(b)(1). The burden then shifts to the States, which must submit to the Administrator "a plan to implement and enforce the guidelines with respect to" existing incinerators "[n]ot later that [one] year after" guidelines are promulgated. *Id.* § 129(b)(2). A State plan must be "at least as protective as

the guidelines" and must ensure that all existing incinerators in the State comply with the guidelines "not later than [three] years after the State plan is approved by the Administrator but not later than [five] years after the guidelines were promulgated." *Id.* "The Administrator shall approve or disapprove any State plan within 180 days of the submission, and if a plan is disapproved, the Administrator shall state the reasons for disapproval in writing." *Id.* Thus, once the EPA issues guidelines: 1) each State has one year in which to submit an implementation plan for the Administrator's approval; 2) a State's plan must be at least as protective as the guidelines; 3) the Administrator has 180 days to approve the State plan; and 4) the State plan must be tailored to meet a specific timeline.

This case involves the Administrator's duties in the event a State fails to comply with § 129(b)(2). If this happens, the Administrator must "develop, implement and enforce" a plan to bring existing units into compliance with the guidelines. *Id.* § 129(b)(3). The Administrator's "federal plan" often mirrors the guidelines, i.e., a State that fails to create its own plan usually ends up with the EPA's guidelines imposed on it. *See, e.g.*, 82 Fed. Reg. at 3559 ("The emissions limits in this proposed CISWI Federal Plan are the same as those contained in the final CISWI [emission guidelines]."); 71 Fed. Reg. at 75,820 ("The emission limitations in this proposed OSWI Federal plan are the same as those contained in the [emission guidelines].").

To date, the Administrator has yet to impose a federal plan upon any State that failed to submit an implementation plan following issuance of either the 2013 CISWI guidelines or the 2005 OSWI guidelines. In response, Sierra Club filed a complaint in district court under the CAA's citizen-suit provision, CAA § 304, 42 U.S.C. § 7604, "to compel the

Administrator . . . to protect public health and the environment from the hazardous emissions of" CISWI and OSWI. Compl. for Declaratory and Injunctive Relief at ¶ 1, *Sierra Club v. McCarthy*, No. 16-2461 (D.D.C. Dec. 16, 2016), ECF No. 1. Sierra Club's complaint suggests in passing that the Administrative Procedure Act (APA) also supports its claim. *See id.* at ¶ 3. Before the district court and now on appeal, Sierra Club has increasingly relied on this argument, *see* Appellant's Br. 1, 23, 32, and we therefore reach it in Section III *infra*. The district court "dismiss[ed] for lack of subject matter jurisdiction Sierra Club's claims that [§ 129(b)(3)] imposes nondiscretionary duties on EPA to 'develop, implement and enforce' federal implementation plans for the 2013 CISWI Standards and the 2005 OSWI Standards" because the claims fell outside an applicable waiver of sovereign immunity. *Sierra Club v. Wheeler*, 330 F. Supp. 3d 407, 423 (D.D.C. 2018).[1] Sierra Club timely appealed to us.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Because sovereign immunity is "jurisdictional in nature," we must assure ourselves that Sierra Club's claims fall within a valid waiver of sovereign immunity before allowing the suit to proceed. *Id.* We have jurisdiction under 28 U.S.C. § 1291. We review the district court's dismissal for lack of subject matter jurisdiction *de novo*. *See Am. Hosp. Ass'n v. Azar*, 895 F.3d 822, 825 (D.C. Cir. 2018).

---

[1] Sierra Club also alleged that the Administrator "missed the statutory deadline to review, and . . . revise EPA's standards for OSWI units." Compl. ¶ 1. The district court granted summary judgment to Sierra Club on this issue, *Sierra Club*, 330 F. Supp. 3d at 423, and the "EPA has not appealed from this part of the court's order," Appellee's Br. 7.

6

II

The CAA's citizen-suit provision, CAA § 304, "empower[s]" "private citizens . . . to enforce emission standards by filing suit in district court." *U.S. Sugar Corp. v. EPA*, 830 F.3d 579, 609 (D.C. Cir. 2016). Sierra Club's suit was brought under § 304(a)(2), Compl. ¶ 64, which is a conditional waiver of sovereign immunity.[2] It gives the district court jurisdiction over a claim "against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary." CAA § 304(a)(2). A duty is nondiscretionary under the CAA if it is "clear-cut" and requires the Administrator to act by a "date-certain deadline." *Sierra Club v. Thomas*, 828 F.2d 783, 791 (D.C. Cir. 1987). This interpretation of § 304(a)(2) is consistent with the requirement that "a waiver of sovereign immunity must be 'unequivocally expressed' in the statutory text" and ambiguities "construed in favor of immunity." *FAA v. Cooper*, 566 U.S. 284, 290 (2012) (citations omitted). The district court held that the Administrator's duty to act under § 129(b)(3) once a state fails to submit a plan does not impose a date-certain deadline. Accordingly, it concluded that it lacked subject matter jurisdiction under the CAA because the duty in question failed to qualify for § 304's conditional waiver of sovereign immunity. *Sierra Club*, 330 F. Supp. 3d at 421. We agree.

---

[2] We note that Sierra Club did not assert an unreasonable delay claim under § 304(a). "To establish a claim of unreasonable delay, petitioners must show that they have 'a right the denial of which we would have jurisdiction to review upon final agency action but the integrity of which might be irreversibly compromised by the time such review would occur.'" *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 554 (D.C. Cir. 2015) (quoting *Sierra Club v. Thomas*, 828 F.2d 783, 796 (D.C. Cir. 1987)).

Because this case is one of statutory interpretation, "[a]s always, our inquiry starts from 'the fundamental canon that statutory interpretation begins with the language of the statute itself.'" *Butler v. West*, 164 F.3d 634, 639 (D.C. Cir. 1999) (quoting *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 557–58 (1990)). We must decide whether the Administrator's duty to "develop, implement and enforce a plan for existing solid waste incineration units . . . located in any State which has not submitted an approvable plan under this subsection with respect to units in such category within [two] years after the date on which the Administrator promulgated the relevant guidelines," CAA § 129(b)(3), is nondiscretionary under *Thomas*. The answer hinges on the clause "within [two] years after the date on which the Administrator promulgated the relevant guidelines" and, specifically, what that clause refers to.

"[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 320 (2014) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). Here, § 129(b)'s overall structure belies Sierra Club's reading of § 129(b)(3). Subsection 129(b) generally addresses existing incinerators—subsection (b)(1) requires emission standards to contain guidelines for existing incinerators; subsection (b)(2) requires States to submit enforcement plans for existing incinerators to the Administrator; and subsection (b)(3) requires the Administrator to develop a federal implementation plan for any State that does not comply with subsection (b)(2). In context, then, § 129(b)(2) sets out how a State is to respond when new guidelines are promulgated; § 129(b)(3) is remedial, however, in that it prevents State inaction from defeating the statutory scheme.

Under § 129(b)(2), a State must "submit [an implementation plan] to the Administrator" within one year of new guidelines being promulgated and the Administrator then has 180 days in which to approve or disapprove its plan. CAA § 129(b)(2). A State plan "shall provide that each unit subject to the guidelines" complies with them "not later than [three] years after" the Administrator approves the State plan and "not later than [five] years after the guidelines were promulgated." *Id.* An existing unit, therefore, *should* comply with new guidelines no later than four years and 180 days after guidelines are promulgated but the statute provides some leeway by rounding the upper limit to "not later than [five] years" after the guidelines' promulgation. *Id.*

At the same time, subsection 129(b)(3) fills the gap if State inaction stymies § 129(b)(2)'s scheme:

> The Administrator shall develop, implement and enforce a plan for existing solid waste incineration units within any category located in any State which has not submitted an approvable plan under this subsection with respect to units in such category within [two] years after the date on which the Administrator promulgated the relevant guidelines. Such plan shall assure that each unit subject to the plan is in compliance with all provisions of the guidelines not later than [five] years after the date the relevant guidelines are promulgated.

*Id.* § 129(b)(3). The EPA reads the first sentence simply to "identif[y] when States should have submitted an approvable plan—namely, two years after guideline promulgation." Appellee's Br. 22–23 (emphasis omitted). Sierra Club, however, believes the Administrator has a date-certain deadline

of two years after guidelines are promulgated in which to develop, implement and enforce a federal plan. *See* Appellant's Br. 33. Applying traditional tools of statutory interpretation, we agree with the district court that the EPA's reading is correct. *See Sierra Club*, 330 F. Supp. 3d at 417–18.

In statutory construction, the rule of last antecedent "provides that 'a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows.'" *Lockhart v. United States*, 136 S. Ct. 958, 962 (2016) (alteration in original) (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)). The limiting phrase "within [two] years after the date on which the Administrator promulgated the relevant guidelines" modifies the phrase that immediately precedes it—"any State which has not submitted an approvable plan under this subsection with respect to units in such category"—and nothing more. Under the ordinary approach, therefore, § 129(b)(3) does not create a nondiscretionary duty, i.e., one that is clear-cut and contains a date-certain deadline when the Administrator must "develop, implement and enforce" a federal plan.

Granted, "this 'Rule of the Last Antecedent' 'is not an absolute and can assuredly be overcome by other indicia of meaning,'" *Hays v. Sebelius*, 589 F.3d 1279, 1281 (D.C. Cir. 2009) (quoting *Barnhart*, 540 U.S. at 26), but no such indicia are present here. Sierra Club argues that § 129(b)(3)'s "context, structure, purpose, and history," Appellant's Br. 34, suggest it was intended to create an enforceable two-year deadline because "[i]t makes little sense that Congress would have carefully set deadlines for every other step in the process but no deadline for this one," *id.* at 35. But the inclusion of deadlines elsewhere in § 129 does not determine whether § 129(b)(3) contains one and it "is highly improbable that a deadline will ever be nondiscretionary, i.e. clear-cut, if it exists

only by reason of an inference drawn from the overall statutory framework." *Thomas*, 828 F.2d at 791. Moreover, to make any sense, Sierra Club's reading requires that the phrase "within [two] years after the date on which the Administrator promulgated the relevant guidelines" *does not* modify its last antecedent. If "within [two] years" modifies *everything* before it as would be expected if the last antecedent rule does not apply, *see, e.g.*, *Am. Fed'n of Gov't Emps., AFL-CIO, Local 3669 v. Shinseki*, 709 F.3d 29, 34 (D.C. Cir. 2013) ("better interpretation is that [phrase] modifies the entire description"), the statute would require the EPA to wait to see which States do not submit plans within two years and simultaneously "develop, implement and enforce" a plan within the same two years. This nonsensical reading is not a basis for departing from the rule of last antecedent.

Because the district court determined that the Administrator does not have a nondiscretionary duty to implement a federal plan under § 129(b)(3), it dismissed the case for lack of subject matter jurisdiction, concluding that the complaint fell outside the CAA's limited waiver of sovereign immunity. *See Sierra Club*, 330 F. Supp. 3d at 421. Sierra Club believes this was error because its complaint *alleged* that § 129(b)(3) creates a nondiscretionary duty and "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional power to adjudicate the case." Appellant's Br. 25 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (emphasis omitted)). But *Steel Co.* and the other cases Sierra Club relies on address dismissal for lack of subject matter jurisdiction if a complaint is "so insubstantial, implausible, foreclosed by prior decisions . . . or otherwise completely devoid of merit as not to involve a federal controversy," *Steel Co.*, 523 U.S. at 89 (quoting *Oneida Indian Nation of N.Y. v. Cty. of Oneida*, 414 U.S. 661, 666 (1974)),

not, as here, where the complaint falls outside a statute's limited waiver of sovereign immunity, *see Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 666 (D.C. Cir. 2006) (dismissal for lack of subject matter jurisdiction because claim fell outside Federal Tort Claims Act's sovereign immunity waiver); *Auster v. Ghana Airways Ltd.*, 514 F.3d 44, 48 (D.C. Cir. 2008) ("Because the defendants have sovereign immunity, the federal courts lack subject matter jurisdiction in this [Foreign Sovereign Immunities Act] case.").[3] The district court correctly dismissed Sierra Club's CAA claim for lack of subject matter jurisdiction.[4]

### III

Sierra Club argues in the alternative that the APA grants jurisdiction because it "waives sovereign immunity in *all* suits for non-monetary relief against the government or a government official in his or her official capacity[,]"

---

[3] Other circuits have also found dismissal for lack of subject matter jurisdiction appropriate in cases brought under the CAA's citizen-suit provision. *See Murray Energy Corp. v. EPA*, 861 F.3d 529, 537 (4th Cir. 2017); *WildEarth Guardians v. McCarthy*, 772 F.3d 1179, 1182 (9th Cir. 2014).

[4] We see no conflict between our holding on this point and the decision in *Sierra Club v. Jackson*, 648 F.3d 848 (D.C. Cir. 2011). Although *Jackson* also involved an allegedly nondiscretionary duty under the CAA, *id.* at 852, the *Jackson* court construed the cause of action as arising under the APA, *id.* at 855, and it was on this basis that the court found dismissal for failure to state a claim the proper resolution in the absence of a mandatory duty, *id.* at 856-57. *See Oryszak v. Sullivan*, 576 F.3d 522, 526 (D.C. Cir. 2009) (dismissing under Rule 12(b)(6) the APA claim brought under 5 U.S.C. § 702 because the APA does not create subject matter jurisdiction and "the APA provides no cause of action to review" a decision that "is an 'agency action ... committed to agency discretion by law.'").

Appellant's Br. 31 (citing 5 U.S.C. § 702), and that we "ha[ve] repeatedly and expressly held in the broadest terms that the [APA's] waiver of sovereign immunity applies to any suit whether under the [APA] or not," *id.* at 32 (quotation marks omitted) (citing *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 620 (D.C. Cir. 2017)). But the APA does not support jurisdiction here because it contains a carve-out that prevents a plaintiff from using its general sovereign immunity waiver to evade limitations contained in other statutes like the CAA. *See* 5 U.S.C. § 702 ("Nothing [in the APA] . . . affects other limitations on judicial review or . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.").

Sierra Club's argument is foreclosed by *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209 (2012), which involved the APA's interplay with the Quiet Title Act (QTA), 28 U.S.C. § 2409a. Although the Supreme Court concluded that Patchak's APA claim fell within the APA's general sovereign immunity waiver, it reached that conclusion only because the QTA "is not addressed to the type of grievance which the plaintiff [sought] to assert." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians*, 567 U.S. at 216 (citation omitted). Here, the CAA *is* "addressed to the type of grievance" Sierra Club seeks to assert and "'[w]hen Congress has dealt in particularity with a claim and [has] intended a specific remedy'—including its exceptions—to be exclusive, that is the end of the matter; the APA does not undo the judgment." *Id.* (quoting *Block v. North Dakota ex rel. Bd. of Univ. and Sch. Lands*, 461 U.S. 273, 286 n.22 (1983)).[5]

---

[5] Our precedent relied upon by Sierra Club is not to the contrary. In *Perry Capital LLC v. Mnuchin*, for example, we specifically noted "[t]he waiver in § 702 does not apply 'if any other statute that grants consent to suit expressly or impliedly forbids the

Because neither the CAA's citizen-suit provision nor the APA conferred jurisdiction on the district court, we affirm its judgment of dismissal.

*So ordered.*

---

relief which is sought.'" 864 F.3d 591, 618 (D.C. Cir. 2017) (citing *Albrecht v. Comm. on Employee Benefits*, 357 F.3d 62, 67–68 (D.C. Cir. 2004)). In other cases, we described the APA's waiver broadly because the claims at issue did not involve a limiting principle in another statute affording relief. *See, e.g.*, *Trudeau v. FTC*, 456 F.3d 178, 185–86 (D.C. Cir. 2006); *Chamber of Commerce v. Reich*, 73 F.3d 1322, 1328–30 (D.C. Cir. 1996).

WILKINS, *Circuit Judge*, concurring: Being in agreement with the panel's disposition of the issues presented, I nonetheless write separately to highlight the nonsensicality of EPA's proffered reading of one relevant passage of the Clean Air Act. Unmoved, apparently, by plain congressional intent, EPA forwarded to this Court an interpretation of a portion of 42 U.S.C. § 7429(b)(3) that, while it would protect EPA from the consequences of its nonfeasance, flies in the face of both reason and the statute's evident purposes, and thus deserves comment.

Lackadaisical regulation of air pollution prompted Congress to amend the Clean Air Act in 1990. *New Jersey v. EPA*, 517 F.3d 574, 578 (D.C. Cir. 2008) (noting Congress's "concern[] about the slow pace" of EPA's regulation of hazardous air pollutants); S. REP. NO. 101-228 (1989), *as reprinted in* 1990 U.S.C.C.A.N. 3385, 3389 (referring to air as a "national resource," and noting that "[t]o protect this resource a strong national control strategy is needed"). Little was left to the imagination; as relevant here, the 1990 amendments baked into the Clean Air Act various directives concerning EPA's regulation of solid waste incineration units ("SWIUs"). 42 U.S.C. § 7429; *see Davis Cty. Solid Waste Mgmt. v. EPA*, 101 F.3d 1395, 1398-99 (D.C. Cir. 1996) (outlining § 7429's directives to EPA with regard to SWIUs), *amended on other grounds on reh'g*, 108 F.3d 1454 (D.C. Cir. 1997).

Fast-forward to the present, however, and it is evident that EPA is not exactly on the ball; for instance, despite § 7429(b)(3)'s edict that a federal implementation plan "shall assure that each [SWIU] subject to the plan is in compliance with all provisions of the guidelines not later than 5 years after the date the relevant guidelines are promulgated[,]" EPA has not to date "impose[d] a federal plan upon any State that [would be subject to such] plan following issuance of either the 2013 CISWI guidelines or the 2005 OSWI guidelines." Majority Op. at 4. EPA, when questioned on this point at oral argument,

asserted to the Court that the at-issue provision of § 7429(b)(3) does not require promulgation of the federal plan on any particular timeline (say, within five years of the promulgation of the relevant guidelines) – no, according to EPA, the statutory directive pertains merely to the *content of the federal plan.* Oral Arg. Recording at 21:48-22:41. Accordingly, it would seem, a federal plan that issued ten or twenty or a hundred years after the promulgation of the relevant guidelines would answer the call of the statute if it set forth means by which compliance with the guidelines *would have been* achieved within five years if EPA had issued the plan prior to the elapse of those five years – which, EPA says, it is not required to do. *See id.* at 21:48-23:47.

Though it is nigh on impossible to square this argument with rationality, its root – its *raison d'être* – is abundantly clear: Having no statutory command to issue its federal implementation plan within five years of the promulgation of the relevant guidelines would free EPA from liability for failure, in this regard, to perform a nondiscretionary duty under 42 U.S.C. § 7604(a)(2) (an academic point for the moment, since, as relevant here, Sierra Club sought only to enforce a *two*-year deadline. *See* Compl. for Declaratory and Injunctive Relief at ¶¶ 64-66, *Sierra Club v. McCarthy*, No. 16-2461 (D.D.C. Dec. 16, 2016), ECF No. 1.). EPA was quick to assert at oral argument that a suit for agency action unreasonably delayed could instead be brought, Oral Arg. Recording at 23:38-23:47 – but of course the legal framework for a suit under 5 U.S.C. § 706(1) presents plaintiffs with quite an uphill climb, *see, e.g.*, *Cobell v. Norton*, 240 F.3d 1081, 1096 (D.C. Cir. 2001) (noting that "courts are reluctant to upset existing agency priorities, . . . . [a]n agency's own timetable for performing its duties in the absence of a statutory deadline is due 'considerable deference[,]' . . . . [and] 'a finding that delay is unreasonable does not, alone, justify judicial intervention.'" (citations

omitted)).  Relegated to the back burner of EPA's conceptual stove, somehow, is Congress's clear intent that the agency take affirmative and timely action to curb SWIUs' emissions of toxic pollutants.

Sierra Club confined its complaint, as to § 7429(b)(3), to the issue of whether EPA's failure to issue and enforce a federal plan within two years of the guidelines' promulgation represented a failure to perform a nondiscretionary duty, Compl. ¶¶ 64-66, and it did not assert an unreasonable-delay claim.  But other suits seeking to enforce the provisions of the Clean Air Act will certainly succeed this one.  So we are left to hope that when EPA appears before this Court again, defending those suits, its arguments will leave jurists, if not satisfied, at least not compelled to describe those arguments in terms that border on the indecorous.